77 F.Supp. 812 (1948)
UNITED STATES
v.
BLANTON et al.
SAME
v.
FAIRCHILD et al.
SAME
v.
PRIEST et al.
Nos. 2721, 2722, 2723.
District Court, E. D. Missouri, Southeastern Division.
April 26, 1948.
*813 Drake Watson, U. S. Atty., of New London, Mo., for plaintiff.
James A. Finch of Cape Girardeau, Mo., James M. Reeves of Caruthersville, Mo., and Harry C. Blanton of Sikeston, Mo., for Charles L. Blanton and others.
Laurence E. Tedrick of Poplar Bluff, Mo., and Harry C. Blanton of Sikeston, Mo., for Louis W. Fairchild and others.
Laurence E. Tedrick of Poplar Bluff, Mo., and Harry C. Blanton of Sikeston, Mo., for William F. Priest and others.
HULEN, District Judge.
Defendants in each of the above cases are charged with violation of the Federal Corrupt Practices Act, Title 2 U.S.C.A. §§ 241-256, specifically Section 250.[1] The first count of each indictment charges conspiracy to commit offenses against the laws of the United States, to wit Section 250, by making and causing to be made an expenditure, and to pay and cause to be paid certain sums of money to divers persons to vote in a General Election. Then follows, in each indictment, additional counts charging substantive offenses under the same section and in the language of the statute. Payments to specific persons are alleged.
Motion to dismiss has been filed in each case. Dismissal is urged because the indictments are fatally defective in that it "does not allege that any money was paid to any voter with the intent and for the purpose of influencing any such voter either to vote for or against or refrain from voting for or against any candidate of either the office of Senator or Representative in Congress."
The indictments are lengthy. In substance they allege in each case that the defendants, in the conspiracy count, set up machinery by which money was placed in the hands of certain co-conspirators to be used and which was used to pay certain named parties to cast a vote in the General Election held on November 5, 1946 in certain townships in counties in Southeast Missouri. The indictments state that on November 5, 1946, pursuant to the laws of the United States and the State of Missouri, a General Election was held in the State of Missouri and at this General Election the names of candidates to the United States Senate and the United States House of Representatives appeared on the official printed ballot at said election. The acts of the conspirators are described, the raising of funds, transfer of the funds to the hands of election workers, and finally delivery of the money into the hands of voters to vote in the General Election, in denominations of $1 for each voter. The indictments nowhere state that the persons voting and receiving money therefor did cast a ballot for either of the Federal officers named. The question is, does an indictment so pleading conspiracy to commit offenses against the laws of the United States, Section 250, which states the names of candidates for United States Senate and House of Representatives appeared upon the official printed ballot, and at the General Election at which the official printed ballot was used certain persons received money to vote in the General Election, plead an offense under the statute *814 and bring the case within this Court's jurisdiction.
In support of their motions to dismiss defendants cite numerous authorities (Blitz v. United States, 153 U.S. 308, 14 S.Ct. 924, 38 L.Ed. 725; United States v. Morrissey, C.C., 32 F. 147; United States v. Gradwell, D.C., 234 F. 446; Ex parte Perkins, C.C.Ind., 29 F. 900; United States v. Cahill, C.C., 9 F. 80; United States v. Seaman, C.C., 23 F. 882; United States v. Kantor, 2 Cir., 78 F.2d 710; Steedle v. United States, 3 Cir., 85 F.2d 867, 107 A.L.R. 1361) which are to the general effect that an indictment under Federal statutes, relating to election of Federal officers, fails to state a charge when there is no connection between the offense charged and the election of a Federal officer. For example an indictment charging a defendant with knowingly receiving a ballot at a General Election without indication that it was a ballot for Congressmen would charge no offense regardless of the corrupt or illegal manner in which the ballot was obtained and cast. Jurisdiction of the Federal court in this type of case does not follow simply because the offense occurred in an election in which a Federal officer was to be voted for, but it is necessary that the indictment charge facts from which it follows that the election of a Federal officer either was influenced or was subject to the probability of unlawful influence. The case of United States v. Cahill, supra, presents the reasoning upon which Federal courts decline jurisdiction for election offenses. The indictment in the Cahill case  as in the majority of cases cited by the defendants  charges an offense under Revised Statutes, § 5511 et seq. known as the Enforcement Act for unlawfully preventing a qualified voter of the state from freely exercising his right of suffrage. The indictment charged that a Congressman was to be voted for at the election. The demurrer was sustained because the indictment failed to state that the voter was offering or seeking to vote for a Congressman. The Supreme Court reversed a conviction for voting in the name of another in Blitz v. United States, supra. Defendant had been indicted under the same statute as in the Cahill case. The indictment in the Blitz case was held faulty because it failed to charge that the defendant had voted for a Federal officer. The Court observed that the defendant might have voted only for a State officer even at a Congressional election and that in doing so he may have committed an offense but it was against the State and punishable only by the State although the General Election included that for Congressmen. In Ex parte Perkins, supra, the acts charged referred exclusively to election of State officers.
Passing to authorities which we think are more in line with the question raised, see Ex parte Coy, 127 U.S. 731, 8 S.Ct. 1263, 1270, 32 L.Ed. 274. In the Coy case the prosecution charged that under the laws of the State of Indiana it was the duty of inspectors at the election to take the certified lists of the voters, with the returns of the judges, safely keep them and deliver them to the county clerk for examination and counting, and that inspectors were persuaded by the defendants to deliver up the certificates, poll lists and tally papers to persons who had no authority to take charge of them and who thus had an opportunity of opening, examining and falsifying the documents. Revised Statutes, Section 5512 made it an offense for an officer who has any duty to perform in relation to registration or election to knowingly neglect or refuse to perform the duties required by law, or violate any duty imposed by law. The election involved was one at which representatives in Congress were voted for. The indictment was challenged on a writ of habeas corpus before the Supreme Court on the ground that it contained no averment that the intent and purpose of the defendants' conduct was to affect in any manner the election of a Member of Congress or to influence the return relating to that office. Such is defendants' claim here. Thus we have a case where the offense concerns tampering with ballots and election returns after the election at which a Member of Congress was to be elected, while the one under consideration relates to an offense connected with corrupting the ballot before or at the time of voting. In disposing of the case the Court observed: "The *815 object to be attained by these acts of congress is to guard against the danger and the opportunity of tampering with the election returns, as well as against direct and intentional frauds upon the vote for members of that body. The law is violated whenever the evidences concerning the votes cast for that purpose are exposed or subjected in the hands of improper persons or unauthorized individuals to the opportunity for their falsification, or to the danger of such changes or forgeries as may affect that election, whether they actually do so or not, and whether the purpose of the party guilty of thus wresting them from their proper custody and exposing them to such danger might accomplish this result." (Emphasis added.)
Coming closer to the issue before this Court we quote the following from the Coy case: "The manifest purpose of both systems of legislation is to remove the ballot-box as well as the certificates of the return of votes cast from all possible opportunity of falsification, forgery, or destruction; and to say that the mere careless omission, or the want of an intention on the part of persons who are alleged to have acted feloniously in the violation of those laws, excuses them because they did not intend to violate their provisions as to all the persons voted for at such an election, although they might have intended to affect the result as regards some of them, is manifestly contrary to common sense, and is not supported by any sound authority." (Emphasis added.)
Defendants rely strongly on the Blitz case, supra [153 U.S. 308, 14 S.Ct. 926]. The Blitz case cites the Coy case and after quoting at length from it makes the following observation with respect to the particular statute on which the prosecutions in the Blitz and Coy cases were based: "It is not to be inferred from the decision in that case (Coy case) that section 5511 is applicable to any act or omission of duty upon the part of an officer of election, or of a voter or other person, except such act or omission of duty as affected or might affect the integrity of the election for a representative in congress." (Emphasis added.)
The Court then distinguished the Blitz case which related to voting in the name of another for a State office with the charge in the Coy case which related to possession of the election returns (including those for Congressmen) after the election, and declares with respect to the application of the Coy case to the situation in the Blitz case: "The conspiracy charged in that case (Coy case) did imperil the integrity of the vote for representative in Congress, because the returns of the election related to representative in Congress as well as to state officers, and were liable to be falsified if they passed, before certificates of election were issued, into the hands of unauthorized persons."
The rule is laid down in plain language in Burroughs v. United States, 290 U.S. 534, 54 S.Ct. 287, 291, 78 L.Ed. 484, which was a prosecution under the Federal Corrupt Practices Act. The indictment charged conspiracy in that a Committee accepted contributions and made expenditures for the purpose of influencing and attempting to influence the election of presidential and vice-presidential electors in two States. Referring to the general powers of Congress to protect the election of Federal officers, the Court said: "The power of Congress to protect the election of President and Vice President for corruption being clear, the choice of means to that end presents a question primarily addressed to the judgment of Congress. If it can be seen that the means adopted are really calculated to attain the end, the degree of their necessity, the extent to which they conduce to the end, the closeness of the relationship between the means adopted, and the end to be attained, are matters for congressional determination alone." (Emphasis added.)
Based on the authorities cited, we conclude that the statute, Section 250, makes it a criminal offense for persons to make or cause an expenditure to be made to any person to vote at a General Election, where the official ballot contains the names of candidates for Congress and the person receiving the expenditure proscribed votes the official ballot, and that such legislation is within the powers of Congress.
*816 The power to protect the election of Members of Congress from corruption is not to be disputed. If there are any degrees of seriousness in crimes affecting elections those who bribe voters are the most reprehensible despoilers of the ballot. If a ballot at a general election on which the names of Federal officers appear is cast as a result of bribery, the entire ballot is contaminated. Assume for argument the defendants were aiming at affecting only the election of State or County officers, which is not a crime under the Federal law, how can their criminal act be limited to such State or County officers when the means by which the crime is committed contains and carries with it a ballot for or against a Federal officer. The Coy case, supra, discusses the purpose of legislation similar to the Corrupt Practices Act as being to remove election of Federal officers from "all possible opportunity" of corruption.
If to cause ballot containers and poll books of election returns, being transported from the polls to the clerk's office, to be delivered into unauthorized hands for the purpose of affecting only the results of a candidate for State office can subject the election of Federal officers, returns of whose elections appear on the same poll books, to the hazard of unlawful interference in an election for Federal officers, as held in the Coy case, the same conclusion must apply and even more forcibly to a ballot placed in the ballot box by bribery on which the names of candidates for Federal office appear, regardless of the intention of the corrupting influences. "To say that Congress is without power to pass appropriate legislation to safeguard such an election from the improper use of money to influence the result is to deny to the nation in a vital particular the power of self-protection. Congress, undoubtedly, possesses that power, as it possesses every other power essential to preserve the departments and institutions of the general government from impairment or destruction, whether threatened by force or by corruption." Burroughs v. United States, 290 U.S. 534, 545, 54 S.Ct. 287, 290, 78 L.Ed. 484.
The first count of each of the indictments is not to be commended as pleading "a plain, concise and definite written statement of the essential facts constituting the offense", as provided in the new Federal Rules of Criminal Procedure, rule 7(c), 18 U.S.C.A. following section 687. It would have been better for the Government in pleading overt acts to charge that the money paid and received by the parties named was to vote and that they did vote, as a result of such payment, an official ballot at the general election. As the indictment stands one must search the remainder of the count to complete the essence of the charge. However we conclude the charge as contained in the indictments is sufficient to state an offense under the statute, to inform the defendants of the offense charged with sufficient clarity to enable them to prepare their defense and to bar a second prosecution for the offense charged. An indictment which does this meets the test as we read the cases on the subject.
As to the substantive counts we conclude the defendants' complaint is without merit. The language of the substantive counts follows the statute.
Complaint is made as to certain defendants that they were called before the grand jury and gave evidence upon which indictments were later returned against them. Such practice is not commended. It could be abused to a degree that would bar prosecution. Prosecuting officials should be careful to protect the constitutional rights of all citizens.
The motion filed by defendant Fuchs is of another character. He complains that he was not advised of his "right to the advice of counsel" when he was called before the grand jury. We know of no authority calling for such a proceeding. To the contrary see In re Black, 2 Cir., 47 F.2d 542, 543: "The appellant insists that, before a witness is compelled to testify before a grand jury, he should be apprised of the subject-matter of the inquiry or the name of the persons against whom the inquiry is addressed, and that he should not be called upon to go unaided by counsel to an inquiry which is unlimited in scope and for which he is entirely unprepared. But the privilege of a witness against self-incrimination is personal. Neither at a *817 trial nor before a grand jury is he entitled to have the aid of counsel when testifying. It is hard to see then why he must be warned of the nature or extent of the testimony which is likely to be called for. A witness is not entitled to be furnished with facilities for evading issues or concealing true facts. Every bona fide investigation by a grand jury seeks to ferret out crime and criminals. To detect crime and to present charges against the guilty requires the most ample power of investigation. Frequently neither the nature of the crime itself, nor the identity of criminals can be forecast. To be compelled to state either in advance we think is likely unnecessarily to impede investigation and obstruct the administration of justice."
Other points raised in motions to dismiss we consider without merit and for that reason do not discuss.
Formal order overruling motions to dismiss will be entered in Court at Cape Girardeau when Court convenes next.
NOTES
[1] "§ 250. Expenditures to influence voting. It is unlawful for any person to make or offer to make an expenditure, or to cause an expenditure to be made or offered, to any person, either to vote or withhold his vote, or to vote for or against any candidate, and it is unlawful for any person to solicit, accept, or receive any such expenditure in consideration of his vote or the withholding of his vote."