**UNITED STATES of America**

v.

**Lena BRUNO.**

**No. 55 Cr. 172.**

United States District Court
N. D. Illinois, E. D.

June 28, 1955.

R. Tieken, U. S. Atty., and Raymond C. Muller, Asst. U. S. Atty., Chicago, Ill., for the Government.

Mayer Goldberg, Chicago, Ill., for defendant.

CAMPBELL, District Judge.

The defendant is under a ten-count indictment charging violations of Section 597, Title 18 of the United States Code. In each count it is alleged that on November 2, 1954, a general election was held in Chicago, Illinois, and in the 45th Precinct of the 42nd Ward of said City, for the purpose of electing a Representative to Congress for the 9th Illinois Congressional District and a Senator from the

State of Illinois. It is alleged that ten various persons named in the separate counts were citizens of the United States and residents of said 45th Precinct, 42nd Ward, in the 9th Congressional District, Chicago, Illinois, and that said persons were "qualified to vote and did vote, in the 45th Precinct, 42nd Ward, aforesaid, in the General Election" on November 2, 1954. It is then alleged that on November 3, 1954 and on other subsequent days, varying as to each count, the defendant "wilfully, knowingly, unlawfully, and feloniously did offer to make and did make an expenditure" to these ten various persons in the sum of $1 each "to vote in the aforesaid General Election".

 The case is now before the Court on the defendant's motion to dismiss the indictment or, in the alternative, to grant a separate trial on each count.

At the outset, it should be observed that the General Election was held on November 2, 1954. Counts I, III, IV, VI, and IX allege that the unlawful expenditures were made by the defendant to various persons on November 3, 1954. Counts II and X allege that the unlawful expenditures occurred on November 4, 1954. Counts V, VII, and VIII allege that the unlawful expenditures were made on November 9, 1954. The conclusion is that each of the ten counts in the indictment alleges that the defendant made unlawful expenditures to the persons named after the date on which the election was held.

Counsel for the Government argues, in his brief that the expenditures in issue were promised before the election and that the actual payments were made after the election. There can be no doubt that such conduct would constitute an offense as Section 591, of Title 18 U.S.C., provides that the term expenditure "includes a payment, distribution, loan, advance, deposit, or gift, of money, or anything of value, and includes a contract, promise, or agreement to make an expenditure, whether or not legally enforceable". However, in the instant case there is no allegation in the indictment at all that the defendant made, before the election, a "contract, promise, or agreement to make an expenditure" after the election. The indictment simply charges that on these various dates, after the election, the defendant "did offer to make and did make an expenditure" to each of the several persons named. Thus, the defendant is not charged with any overt act occurring before or during the election but is charged with actions occurring after the election when the alleged conduct could not possibly have affected the results of the election. Having reached this conclusion, it follows that the indictment must be dismissed for failing to charge an offense made punishable by law.

 There are, however, other grounds which require the dismissal of the present indictment. The indictment contains no allegation that any of the voters were influenced to vote for a candidate for federal office. Indeed, it is not even alleged that the voters did, in fact, vote for a federal candidate. The indictment merely alleges that a general election was held "for the purpose of electing a Representative to the Congress of the United States from the Ninth Illinois Congressional District, and for the purpose of electing a Senator to the Congress of the United States". It is then charged that the defendant made expenditures to various persons "to vote in the aforesaid General Election" and that these persons did vote in the general election. The Court takes judicial cognizance of the fact that at the general election held in Chicago, Illinois, on November 2, 1954, the voters were at liberty to vote at the same poll, by printed ballots, not only for a Representative in Congress, and a Senator from the State of Illinois, but also for a number of state officers. Citing Blitz v. United States, 153 U.S. 308, 14 S.Ct. 924, 38 L.Ed. 725. It is not inconceivable that the voters in question were paid to vote for state officers only and that they did, in fact, vote only for state officers. It is equally possible that they were paid to vote for federal as well as state officers and that they did, in fact, vote for the federal candidates. If a voter is paid to vote for a

state officer, it is a state offense; if he is paid to vote for a federal officer, it is a federal offense. Therefore, it is necessary that the indictment in the instant case clearly charge that the voter was influenced by the defendant to vote for a candidate for federal office or, in the alternative, charge that the voter was illegally induced to vote at a general election at which he did, in fact, cast a ballot for a federal candidate.

In Blitz v. United States, cited above, the Supreme Court was presented with much the same problem as is presented here. In a well reasoned opinion, Mr. Justice Harlan, who delivered the opinion of the court, states in the reported decision in 153 U.S. at page 313, 14 S. Ct. at page 926:

"The first count charged that the defendant knowingly personated and voted, and attempted to vote, in the name of another person, to the grand jurors unknown, at an election had and held for choice of representative in the congress of the United States. But that was not, except by inference, a charge that the defendant in fact voted for representative in congress. He may have voted only for state officers, and yet it could be said, not unreasonably, that he voted at an election had and held for representative in congress. If, in voting for a state officer at such election, he knowingly personated and voted in the name of another, it was an offence against the state, punishable alone by the state, although the general election at which he voted was one at which a representative in congress was chosen. The object of section 5511 was to prevent frauds that would affect the vote for representatives in congress, and not to bring elections for state officers under the control of the general government."

Again, in the reported opinion in 153 U.S. beginning at the bottom of page 314, 14 S.Ct. at page 927, Mr. Justice Harlan goes on to state:

"Voting, in the name of another, for a state officer, cannot possibly affect the itegrity of an election for representative in congress. With frauds of that character the national government has no concern, and therefore an indictment under the [Rev.Stat.] section 5511, for knowingly personating and voting under the name of another, should clearly show that the accused actually voted for a representative in congress, and not simply that in voting he falsely personated another at a general election at which such representative was or could have been chosen. In cases like the present one it should not be left in doubt, or to mere inference, from the words of the indictment, whether the offence charged was one within federal cognizance."

The language of the Blitz case, which I have just cited, controls the instant case. A Federal criminal indictment cannot secure the aid of presumptions and inferences when there is doubt as to whether it charges the commission of a Federal offense. It follows, therefore, that the present indictment must be dismissed.

The Government relies heavily on United States v. Blanton, a District Court decision from Missouri, reported in 77 F.Supp. 812. The Court in that case relied almost entirely on Ex parte Coy, 127 U.S. 731, 8 S.Ct. 1263, 32 L.Ed. 274. In the Coy case, the Supreme Court was concerned with the instance where unauthorized persons had possession of the election returns, both state and Federal. Mr. Justice Harlan distinguished the situation presented by the Coy case from that presented in the Blitz case, and indeed from that presented in the present case, by stating at page 314 of the Blitz opinion [153 U.S., 14 S.Ct. at page 926], that:

"The conspiracy charged in that case did imperil the integrity of the vote for representative in congress, because the returns of the election

related to representative in congress as well as to state officers, and were liable to be falsified if they passed, before certificates of election were issued, into the hands of unauthorized persons. But this reasoning has no application to the present case."

I find, therefore, that the reasoning of the Blanton case, cited above, is neither convincing nor persuasive when applied to the instant case, and that the instant case is controlled by the language of the Supreme Court, Mr. Justice Harlan, in the Blitz case.

For these reasons, the instant indictment of the November 1954 Grand Jury is hereby dismissed.