UNITED STATES of America

v.

Jack L. SIMMS, Jr.

Crim. A. No. 79–20032–07.

United States District Court,
W. D. Louisiana.

Dec. 10, 1979.

J. Ransdell Keene, U. S. Atty., John P. Lydick, Michael H. Wainwright, Mimi Methvin, Asst. U. S. Attys., Shreveport, La., for United States of America.

Raleigh Newman and Fred Book, Jr., Lake Charles, La., for Jack L. Simms, Jr.

HEEBE, Chief Judge, Eastern District of Louisiana (Sitting by Designation):

This cause was submitted on memorandum without oral argument on the motions of defendant, Jack L. Simms, Jr., to dismiss the indictment.

The Court, having studied the legal memoranda submitted by the parties, is now fully advised in the premises and ready to rule. Accordingly,

IT IS THE ORDER OF THE COURT that the motions of the defendant, Jack L.

Simms, Jr., to dismiss the indictment, be, and the same are hereby DENIED.

## REASONS

Defendant, Jack L. Simms, Jr., was originally indicted in the above-captioned matter on July 20, 1979 and was charged, along with eight co-defendants, with one count of conspiracy to violate 42 U.S.C. § 1973i(c) and fourteen counts of substantive violations of 42 U.S.C. § 1973i(c).[1] On August 3, 1979, defendant filed a motion to dismiss the indictment on grounds that 42 U.S.C. § 1973i(c) is unconstitutionally vague and represents an unauthorized extension of Congressional power into an area exclusively reserved for the State, as prohibited by the Tenth Amendment to the Constitution. This motion was referred to the Court for consideration and was formally taken under advisement on November 12, 1979.

On August 30, 1979, by Order of Magistrate Tritico for the Western District of Louisiana, Lake Charles Division, the defendant was severed for trial from the other co-defendants. Thereafter, on September 18, 1979, the Grand Jury returned a fifteen-count superseding indictment charging the defendant with substantially the same offenses as charged in the original indictment. On November 15, 1979, the Grand Jury returned a second superseding indictment against the defendant on the same offenses as previously charged but which reduced the number of substantive violations from fourteen to one and narrowed the purpose of the conspiracy from those originally defined to that of obtaining votes only for Jack L. Simms, Sr., defendant's father and a candidate for state district judge at the general election held on September 16, 1978.

Defendant has now reasserted his previous motion to dismiss the indictment in a new motion to dismiss filed on November 27, 1979. The essential grounds upon which the defendant seeks dismissal of the indictment are identical in both motions:

"1. The statute in question, 42 U.S.C. § 1973i(c), is unconstitutional because of vagueness; the body of the statute does not conform to the heading thereon.

2. 42 U.S.C. § 1973i(c) as enacted is [in] violation of the 10th amendment to the United States Constitution since it is beyond the power and/or authority of Congress to enact, and is in derogation of the principal of Federal-State regulations.

3. The indictment does not charge Defendant, Jack L. Simms, Jr., with having committed an offense against the United States." Defendant's Motion to Dismiss the Indictment, filed November 27, 1979.

After careful consideration of these questions, this Court is of the opinion that 42 U.S.C. § 1973i(c) is not unconstitutionally vague nor does this statute violate the Tenth Amendment as an unauthorized extension of Congressional regulation into an area reserved for the States. Accordingly, the indictment does charge the defendant with having committed an offense against the United States and is not subject to dismissal on these grounds.

## THE DOCTRINE OF VAGUENESS

■ The defendant would have this Court dismiss the indictment on the grounds that 42 U.S.C. § 1973i(c) is so ambiguous that persons of ordinary prudence are incapable of discovering its scope and meaning, thereby violating the Fifth Amendment guarantee of due process. Specifically, the defendant maintains that this statute fails to clarify whether the offense of paying or offering to pay voters has to be for the election of a federal candidate. Because of this provision's failure to so provide, defendant urges this Court to declare the statute unconstitutional.

42 U.S.C. § 1973i(c) provides in part:

"Whoever knowingly or willfully . . . pays or offers to pay, or accepts payment either for registration to vote or for vot-

---

1. Specifically, defendant was charged with violations of 18 U.S.C. § 371 (Conspiracy); 42 U.S.C. § 1973i(c) (Vote-Buying); and 18 U.S.C. § 2 (Aiding and Abetting).

ing shall be fined not more than $10,000 or imprisoned not more than five years, or both: *Provided, however,* That this provision shall be applicable only to general, special, or primary elections held solely or in part for the purpose of selecting or electing any candidate for the office of . . . Member of the United States House of Representatives . . . "

The language of this provision is clear. The statute seeks to regulate the commercial payment of voters in any election in which a federal office is at stake. The Congress has enacted a straightforward provision designed to eliminate any impropriety in a federal election by strictly prohibiting the offer or purchase of votes for any candidate in that election. The statutory text of § 1973i(c) specifically defines the extent of the regulated conduct and delineates the circumstances under which this provision will apply. The statute is not unconstitutionally vague.

■ The concept of vagueness is rooted in a "rough idea of fairness" designed to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited. *Colten v. Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972); *United States v. Wise,* 550 F.2d 1180 (9th Cir. 1977), *cert. denied,* 434 U.S. 929, 98 S.Ct. 416, 54 L.Ed.2d 290 (1977), *reh. denied,* 434 U.S. 977, 98 S.Ct. 542, 54 L.Ed.2d 472 (1977).[2] Thus, the due process clause of the Fifth Amendment requires that the language of any criminal statute be precise enough to provide notice of the prohibited conduct. *Champlin Rfg. Co. v. Commission,* 286 U.S. 210, 52 S.Ct. 559, 76 L.Ed. 1062 (1931). Although the Constitution does not require exact specificity, it does require that the proscribed activity be identified with a reasonable degree of certainty. *United States v. Barnett,* 587 F.2d 252 (5th Cir. 1979), *cert. denied,* 441 U.S. 923, 99 S.Ct. 2031, 60 L.Ed.2d 396 (1979).

■ In essence, whether a statute is unconstitutionally vague depends upon the common understanding of its terms. *United States v. Ocegueda,* 564 F.2d 1363 (9th Cir. 1977). If a person of average intelligence would have reasonably understood that some contemplated conduct is proscribed, then the statute is not vague. *United States v. Louderman,* 576 F.2d 1383 (9th Cir. 1978), *cert. denied,* 439 U.S. 896, 99 S.Ct. 257, 58 L.Ed.2d 243 (1979). However, if men of common intelligence must guess at the meaning of a statute and differ as to its application, then such a provision would violate the guidelines of due process. *Champlin Rfg. Co. v. Commission, supra.*

■ It is equally clear that the due process doctrine of vagueness demands that the statutory text be sufficiently definite to prevent the possible arbitrary or discriminatory enforcement of the provision by the prosecutor, the court, or the jury. *Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974). The Government must not have the "unfettered discretion" to prosecute on the basis of a statute which is so vague or of such broad applicability that the even handed administration of the law is not possible. *Papachristou v. City of Jacksonville,* 405 U.S. 156, 168, 92 S.Ct. 839, 846, 31 L.Ed.2d 110 (1972). Where prosecutors or law-enforcement officials may impose their personal predilections in determining what should be permissible behavior under a statute, such a provision is unconstitutional. *See: Big Egal v. Andera,* 418 F.Supp. 126 (D.S.D.1976).

In *United States v. Lewin,* 467 F.2d 1132 (7th Cir. 1972), the Seventh Circuit directly addressed the question of the constitutional vagueness of § 1973i(c):

"We are unpersuaded that 42 U.S.C. § 1973i(c) is unconstitutionally vague, or proscribes efforts by civic groups to encourage people to register. The statute uses the word 'pay.' It in no way prohibits assistance rendered by civic groups to

---

**2.** The importance of "fairness" as a controlling notion in due process considerations of vagueness stems from the Constitution's emphasis at closely guarding the relationship between indi-

viduals and the units of government. *Rowan v. Post Office Dept.,* 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970).

prospective voters; nor would we deem a fringe benefit (such as) continuation of an employee's wages to be proscribed by the statutory direct prohibition for voting." Id. at p. 1136.

The court in *Lewin* correctly upheld the constitutionality of the statute and found that the language of the statutory text was succinct in clearly stating the proscribed conduct.

The Court finds that the language of § 1973i(c) is sufficiently clear to enable a person of ordinary intelligence to have a reasonable opportunity to understand the proscribed conduct. The statute prohibits an offer to pay or a payment made directly for the act of registering to vote or for exercising the franchise in a federal election. The statute is not so vague as to preclude assistance of voters by civic groups or to allow for the selective prosecution of individuals. Nor is there any danger that the statute is so vague as to mislead persons in its application and enforcement. The terms of the provision are clear. The statute may apply to any instance of vote-buying that occurs in connection with an election where a federal candidate is to be voted upon. Adequate notice of the proscribed conduct is served and the scope of its application is identified. 42 U.S.C. § 1973i(c) is not unconstitutionally vague.

### THE TENTH AMENDMENT

Defendant also asserts that § 1973i(c) is unconstitutional because it regulates conduct at state elections which is outside of the bounds of Congressional power. The defendant argues that an individual's conduct at an election can only be regulated by the federal government if there is some direct connection with an election for a federal office. Defendant contends that merely because a federal office is at stake in a general election is insufficient to permit Congress to regulate conduct which may relate solely to a state election held in conjunction with the federal election.

There is little doubt that in enacting § 1973i(c) Congress plainly intended to prohibit any payment for voting as long as it occurs in connection with an election where federal candidates are voted upon. That the statute was envisioned to apply to purely local elections held at the same time as federal elections is evident from a review of the House Report submitted in consideration of this provision:

"The power of Congress to reach intimidation by private individuals in purely local elections derives from article I, section 4, and the implied power of Congress to protect Federal elections against corrupt influences ... While article I, section 4 and the implied powers of Congress to prevent corruption in elections normally apply only to Federal elections, and section 11 [§ 1973i(c)] applies to all elections, these powers are plenary within their scope, and, where intimidation is concerned, it is impractical to separate its pernicious effects between Federal and purely local elections." 1965 U.S.Code Cong. and Admins.News 2437, 2462.

Section 11(b) was part of the original Voting Rights Act of 1965 and was later codified as 42 U.S.C. § 1973i(c). The legislative history of this section illustrates that its purpose was to assure ballot security for the expanded franchise contemplated by the Voting Rights Act. At the time this statute was passed, Congress had previously enacted a provision designed to govern expenditures to influence voting in an election for a federal official. *See:* 18 U.S.C. § 597.[3] Obviously, § 1973i(c) was intended as something more than a mere replication of the existing provision. Instead, the designed impact of this statute was to extend the protection of the federal courts to local elections held at the same time that any federal office was voted upon to secure the federal election from the danger of any impropriety or irregularity.

---

3. This statute provides for the regulation of any expenditure made for the purpose of inducing a person to vote or not to vote for an individual who seeks nomination for election, or election, to Federal office.

■ The power of Congress to regulate federal elections is derived from Article I, Section 4, Clause 1 of the United States Constitution. *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1974). This Article embraces the authority of Congress to provide for the protection of voters and the prevention of fraud and corrupt practices at a federal election. *United States v. Original Knights of Ku Klux Klan,* 250 F.Supp. 330 (E.D.La.1965). However, the Congressional authority to pass legislation on matters pertaining to federal elections is not limited to that provided by Article I, Section 4. Congress also has the authority to pass all laws which are "necessary and proper" to protect the federal elective system against fraud and corrupt abuse. *Buckley v. Valeo, supra; United States v. Original Knights of Ku Klux Klan, supra.* This authority stems from the general power invested in Congress under Article I, Section 8, Clause 18 of the United States Constitution. *McCulloch v. State of Maryland,* 4 Wheat. 316, 17 U.S. 316, 4 L.Ed. 579 (1819). In *McCulloch,* Chief Justice Marshall noted that this provision leaves to Congress the choice of the means determined to exercise its powers:

"Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consistent with the letter and the spirit of the Constitution are constitutional." Id., 4 Wheat. (17 U.S.) at p. 321.

Therefore, as prescribed by this test, Congress has the authority to enact all "necessary and proper" legislation to that derived from Article I, Section 4, Clause 1, provided that it is reasonably related to the protection of the integrity of the federal electoral process. *United States v. Original Knights of Ku Klux Klan, supra,* at p. 353. 42 U.S.C. § 1973i(c) is exactly such a statute and was promulgated as part of Congress' power to make laws "necessary and proper" to the enforcement of Constitutional provisions.[4]

Congress clearly has the authority to protect federal elections from fraudulent or corrupt practices. *See: Ex Parte Yarbrough,* 110 U.S. 651, 4 S.Ct. 152, 28 L.Ed. 274 (1884). In *Yarbrough,* certain members of the Ku Klux Klan had been convicted of violations under the Enforcement Act of 1870, R.S. § 5508, *et seq.,* for beating a Negro who had attempted to vote in a federal election held at the same time that state and local offices were selected. The defendants challenged the Act's constitutionality on the grounds that the federal government could not regulate into an area reserved to the States. The Supreme Court addressed this argument by noting:

"That a government whose essential character is republican, whose executive head and legislative body are both elective, whose most numerous and powerful branch of the legislature is elected by the people directly, has no power by appropriate laws to secure the election from the influence of violence, of corruption, and of fraud, is a proposition so startling as to arrest attention and demand the gravest consideration." Id. at pp. 657–658, 4 S.Ct. at p. 155.

The court held that under the necessary and proper clause of the Constitution, Congress had the implied authority to protect all federal elections from violence and corruption. Merely because state elections may be held at the same time as elections for federal office does not restrict the authority of Congress to regulate to protect the integrity of the federal election. The Supreme Court upheld the constitutionality of R.S. § 5520 of the Enforcement Act, under which the defendants had been charged.

The reasoning employed by the Supreme Court in *Yarbrough* established a foundation upon which analogous decisions strengthened Congress' recognized right to proscribe regulations for federal elections. *In Re Coy,* 127 U.S. 731, 8 S.Ct. 1263, 32 L.Ed.2d 274 (1888) was one such case.

The defendants in *Coy* were Indiana election officials who had mishandled ballots in

---

4. See: House Report No. 439, 1965 U.S.Code Cong. and Admins.News, 2437, 2462.

connection with an election at which both federal and state offices were at stake. The defendants were indicted under a statute which proscribed election irregularities that occurred during any election at which federal candidates were voted upon, however the defendants were not charged with any interference with the federal election, only with attempting to tamper with the returns in the corresponding state elections. Defendants contested the constitutionality of the statute on the grounds that they could not be convicted in a federal court unless they had actually tampered with a federal contest. The Supreme Court declared the statute constitutional and found that Congress had the power to pass any provision to secure the fair and honest conduct of an election at which a member of Congress is elected. The Court discussed the purpose behind the statute in question:

> "The object to be attained by these acts of Congress is to guard against the danger, and the opportunity, of tampering with the election returns, as well as against direct and intentional frauds upon the vote for members of that body. The law is violated whenever the evidences concerning the votes cast for that purpose are exposed or subjected in the hands of improper persons or unauthorized individuals to the opportunity for their falsification, or to the danger of such changes or forgeries as may affect that election, whether they actually do so or not, and whether the purpose of the party guilty of thus wresting them from their proper custody and exposing them to such danger might accomplish this result." Id. at p. 754, 8 S.Ct. at p. 1270.

Thus, despite the fact that the defendants had not been indicted on charges of tampering with the federal election, the Court upheld their convictions and so inferred that Congress has the power to protect the integrity of a federal election by regulating conduct at any election held at the same time as the federal contest. *In re Coy* remains to this date as an incisive pronouncement on Congressional authority controlling federal elections.

In *United States v. Blanton*, 77 F.Supp. 812 (E.D.Mo.1948), the Court interpreted the constitutionality of Title 2 U.S.C., 1940 ed., § 250, the predecessor to 18 U.S.C. § 597. The defendant was accused of making certain expenditures to influence voting in a general election in which a federal office was being voted upon. The defendant contended that the indictment failed to allege an offense against the United States as the indictment did not state that the defendant had influenced any votes in the federal election. The Court commented generally that federal court jurisdiction does not automatically attach whenever a federal contest is present in a general election, but then discussed the power of Congress to regulate federal elections:

> "The power to protect the election of Members of Congress from corruption is not to be disputed. If there are any degrees of seriousness in crimes affecting elections those who bribe voters are the most reprehensible despoilers of the ballot. If a ballot at a general election on which the names of Federal officers appear is cast as a result of bribery, the entire ballot is contaminated. Assume for argument the defendants were aiming at affecting only the election of State or County officers, which is not a crime under the Federal law, how can their criminal act be limited to such State or County officers when the means by which the crime is committed contains and carries with it a ballot for or against a Federal officer ..." Id. at p. 816.

The Court denied defendant's motion to dismiss the indictment.

■ 42 U.S.C. § 1973i(c) proscribes the offer to pay or the payment for votes in any election in which a federal office is contested. The statute does not direct that the payments must be made for a candidate for the federal office—only that a candidate for federal office must be voted upon in the election. The purpose for this statute is designed to preserve the integrity of the federal election by preventing any fraud or irregularity at the election. The statute is a "necessary and proper" means of protecting the federal franchise that is created by Article I, Section 4 of the Constitution.

Although the decline of the doctrine of "State's Rights" has produced relatively little recent jurisprudence in this area, the constitutional validity of § 1973i(c) is in part measured by the silence of the courts on this issue. In *United States v. Lewin, supra,* the defendant challenged his indictment for violations of § 1973i(c) on the grounds that all charges related to acts pertaining to the local Indiana elections and therefore the indictment was defective for its failure to specify only federal election charges. The Seventh Circuit affirmed the conviction, noting only that the purchased registrations had the potential to impact upon the Federal contests.[5] Similarly, in *United States v. Barker,* 514 F.2d 1077 (7th Cir. 1975), one of the defendants was indicted under § 1973i(c) for the filling out of false ballot applications for the purpose of voting in a general primary election. Although the evidence tended to indicate that defendant's motive was purely to influence several local elections, the Court sustained defendant's conviction without comment as to whether the statute required proof of some connection with the federal contest.[6]

■ Article I, Section 4 of the Constitution does not require Congress to assume exclusive control of all elections over that specifically granted to the states. Rather, this article contemplates the cooperation between the states and the federal government to regulate election conduct. *Ex Parte Siebold,* 100 U.S. 371, 25 L.Ed. 717 (1879). Merely because a Congressional act proscribes activity also regulated by the states does not make that act unconstitutional. *Westfall v. United States,* 274 U.S. 256, 47 S.Ct. 629, 71 L.Ed. 1036 (1927). Accordingly, § 1973i(c) is not an attempt by Congress to preempt state vote-buying statutes or to in any manner interfere with state regulation of purely state elections.

In this manner, the instant case differs substantially from *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), which had declared as unconstitutional certain acts of Congress which had usurped state regulation of minimum wage guidelines for state public employees. Louisiana governs election offenses committed in state elections in LSA–R.S. 18:1461, *et seq.* Section 1973i(c) only applies where a state election is held in connection with a federal contest in which the conduct in question threatens to impact upon federal elective interests.

The defendant in the instant action would have this Court interpret the Tenth Amendment to strictly limit the powers of Congress as delegated by the Constitution. However, nothing in the Tenth Amendment itself suggests that such an interpretation is demanded to so limit the Congressional exercise of power. *See: Martin v. Hunter's Lessee,* 1 Wheat. 304, 14 U.S. 304, 4 L.Ed. 97 (1816).

Defendant cites this Court to *United States v. Harvey,* 250 F.Supp. 219 (E.D. La. 1965), for authority that Congress is powerless to punish individual action as it relates to state elections. In that case, the issue before the Court was the propriety of 42 U.S.C. § 1971(b) in authorizing the government to enjoin private individuals from interfering with the voting rights of Negro voters under the Voting Rights Act of 1965. The Court interpreted § 11(b) of the Act because of its similarity to § 1971(b) to derive its power from the Fifteenth Amendment and thereby to limit its application to only state action. As discussed above, § 11(b), part of which now constitutes § 1973i(c), was enacted as part of Congress' authority to make "necessary and proper" legislation to their Constitutional power to regulate federal elections under

---

**5.** See the government's memorandum submitted in opposition to defendant's motion to dismiss, p. 10.

**6.** Defendant herein cites *Barker* as authority for his contention that § 1973i(c) requires direct allegations of involvement in the federal election for the reason that the District Court in *Barker* gave a jury instruction in which this was the stated rule. However, that charge was given for 18 U.S.C. § 241, which does require federal activity.

Article I, Section 4 of the Constitution.[7] Accordingly, the *Harvey* court's reliance upon the Fifteenth Amendment is misplaced and this decision is not controlling before this Court.

■ Defendant contends that *United States v. Blanton, supra,* and *United States v. Bruno,* 144 F.Supp. 593 (N.D. Ill. 1955), mandate that an indictment in a case involving payment of money to voters must charge facts specifically indicating that the payment was an attempt to influence the federal election for there to be an offense against the United States charged. However, both of these cases involved interpretations of 18 U.S.C. § 597 which proscribes conduct only as it relates to federal elections. The immediate indictment charges defendant with violations under 42 U.S.C. § 1973i(c) which purposely does not limit its application to only federal elections. The immediate indictment charges defendant with violations under 42 U.S.C. § 1973i(c) which purposely does not limit its application to only federal elections. Thus, *Blanton* and *Bruno* are clearly distinguishable from the instant action.[8]

As previously discussed, defendant relies upon *United States v. Barker, supra,* for the authority that an indictment for vote-buying in a federal election must allege some federal connection. However, the language in that case upon which defendant depends is founded under 18 U.S.C. § 241 which, as with *Blanton* and *Bruno,* specifically requires the proscribed conduct to be connected to the federal election. Defendant's argument with respect to *Barker* does not apply to the facts of the instant case. Defendant's citation of *Anderson v. United States,* 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974) is equally distinguishable on the same grounds.

It is not so "unreasonable and unrealistic", as defense counsel suggests, for Congress to promulgate a statute which proscribes conduct at any election in which a candidate for federal office is voted upon. The purpose of such a statute is to secure the sancity of federal elections and to protect all voters who may go to participate in such an election. Were Congress powerless to extend its authority into state elections held in conjunction with federal contests, the government would be unable to guard against fraudulent or corrupt practices which could taint the validity of the federal election. 42 U.S.C. § 1973i(c) is constitutional as a "necessary and proper" enactment to protect the federal right to vote.

### CLOSING REMARKS

■ Congressional legislation is presumed to be valid and constitutional. *Davies Warehouse Co. v. Bowles,* 321 U.S. 144, 64 S.Ct. 474, 88 L.Ed. 1135 (1944); *Wampler v. Lecompte,* 282 U.S. 172, 51 S.Ct. 92, 75 L.Ed. 276 (1930). A statute's repugnancy to the Constitution must be clearly evident before that provision will be stricken as unconstitutional. *National Mutual Ins. Co. v. Tidewater Transfer Co.,* 337 U.S. 582, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949). It is not enough to show that the constitutionality of a provision is fairly debatable; rather, the burden is on the party attacking the constitutionality of the statute to establish its invalidity to such a degree as to leave no reasonable doubt. *El Paso and Northeastern Railway Co. v. Gutierrez,* 215 U.S. 87, 30 S.Ct. 21, 54 L.Ed. 106 (1909).

The Court is unconvinced that 42 U.S.C. § 1973i(c) is unconstitutional. The statute is not unconstitutionally vague. *United States v. Lewin, supra.* It proscribes clear conduct and defines the scope of regulation with sufficient certainty to give the defendant fair notice. Nor does the statute violate the Tenth Amendment. The federal government has the authority to regulate all federal elections. Congress may pass all laws "necessary and proper" to secure this federally protected right. As such, Congress may regulate state elections held at

---

7. See: 1965 U.S. Code. Cong. and Admins. News 2437, 2462.

8. In fact, *Blanton,* as previously discussed, is authority for the regulation of any activity at an election at which a federal official is elected by Congress.

the same time a federal office is voted upon. This activity does not prohibit state regulation of purely state elections. Section 1973i(c) secures the right of every citizen to participate in a federal election free from any fraud or corrupt practices. It cannot be known what any person, influenced by the promise of money, will do once he or she steps into the voting booth. To protect the integrity of the federal election, § 1973i(c) must reach activity that affects either partially or primarily state elections. As § 1973i(c) proscribes voting irregularities which occur in a state election held at the same time as a federal contest, the indictment returned against Jack L. Simms, Jr., on November 15, 1979 clearly charges an offense against the United States. Defendant's motions to dismiss the indictment must be DENIED.