UNITED STATES of America, Plaintiff,

v.

Lois SAYRE, et al., Defendants.

No. 81–00026–01/03–CR–W–1.

United States District Court,
W. D. Missouri, W. D.

Sept. 2, 1981.

**974**

James M. Cole, Public Integrity Section, Crim. Div., Dept. of Justice, Washington, D.C., for plaintiff.

G. Stephen Long, Shughart, Thomson & Kilroy, Charles E. Patterson, Watson, Ess, Marshall & Enggas, Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER DENYING DEFENDANTS' JOINT MOTION TO DISMISS

JOHN W. OLIVER, Senior District Judge.

This case pends on defendants' joint motion to dismiss the ten count indictment which alleges violations of 42 U.S.C. § 1973i(c), "vote-buying," and 18 U.S.C. § 371, conspiracy. Defendants allege (1) that if § 1973i(c) is construed to apply to "vote-buying" aimed solely at electing a county sheriff, such a construction would violate the Tenth Amendment, (2) that this Court does not have jurisdiction of "vote-buying" aimed solely at electing a county sheriff for the reason that such activity does not constitute an offense against the laws of the United States within the jurisdiction conferred by 18 U.S.C. § 3231, and (3) that the indictment is subject to dismissal in that it fails to allege that the "vote-buying" related to or affected the result of the election of the federal offices on the ballot.

Defendants' suggestions in support of that motion and the government's suggestions in opposition, for the most part, cite and rely on the same cases. In particular, those suggestions discuss the rationale of *Ex parte Siebold*, 100 U.S. 371, 25 L.Ed. 717 (1880); *Ex parte Yarbrough*, 110 U.S. 651, 4 S.Ct. 152, 28 L.Ed. 274 (1884); *In re Coy*, 127 U.S. 731, 8 S.Ct. 1263, 32 L.Ed. 274 (1888); *Blitz v. United States*, 153 U.S. 308, 14 S.Ct. 924, 38 L.Ed. 725 (1894), and the progeny of those cases. Both sides also cite and rely on the recent Fifth Circuit case of *United States v. Bowman*, 636 F.2d 1003 (5 Cir. 1981) and the government relies on *United States v. Simms*, 508 F.Supp. 1179 (W.D.La.1979).

We have considered all of the cases cited by the parties and have conducted independent research in regard to the questions presented. We are satisfied that § 1973i(c) is not unconstitutional, that this Court has jurisdiction, and the government is not required either to allege or prove that the alleged "vote-buying" either related to or in any way affected the result of any election for a federal office as contained on the ballot.

The Fifth Circuit in *Bowman* stated that under the facts of that case it was not necessary to reach, and the court therefore did not reach, the question of whether § 1973i(c) would apply if the corrupt practices involved only state or local candidates. *Bowman*, however, made clear that "We do decide that § 1973i(c) may be constitutionally applied to prohibit any activity that has the potential to affect the integrity and purity of a federal election where both federal and the state or local races are on the ballot and that a specific intent to corruptly influence the federal race need not be proven." [636 F.2d 1012] Chief Judge Heebe was required in *Simms* to reach the question of whether conduct which may relate solely to a state election held in conjunction with a federal election could be constitutionally prohibited by the Congress.

When the Fifth Circuit handed down its decision in *Bowman* on February 9, 1981 it was under the impression that there had been only four reported cases dealing with § 1973i(c) up to the time *Bowman* was decided. 636 F.2d at 1008, fn2. Although *Simms* has been but recently published in the May 11, 1981 Federal Supplement advance sheet, that publication shows that Chief Judge Heebe's memorandum opinion and order denying the defendant's motion to dismiss were entered December 10, 1979,

a substantial period of time before the Fifth Circuit decided *Bowman*. It is thus apparent that Chief Judge Heebe did not have the benefit of *Bowman* when he decided *Simms*, and that the Fifth Circuit did not have the benefit of *Simms* when it decided *Bowman*. It is therefore significant that *Simms* and *Bowman* rejected the Tenth Amendment arguments presented in those cases, which are basically the same arguments presented in this case, for precisely the same reasons.

Both *Simms* and *Bowman* recognized, we believe properly, that Article I, § 4 of the Constitution grants the Congress power to regulate elections of members of the Senate and House of Representatives. See *Buckley v. Valeo*, 424 U.S. 1, 13, 96 S.Ct. 612, 631–32, 46 L.Ed.2d 659 (1976), and the cases cited in footnote 16 on page 13. Both *Simms* and *Bowman* further recognized that under the Necessary and Proper clause contained in Article I, § 8, cl. 18, as construed by Chief Justice Marshall in *McCulloch v. State of Maryland*, 17 U.S. (4 Wheat.) 316, 420, 4 L.Ed. 579 (1819), the Congress is vested with additional power to choose the means by which the power conferred by Article I, § 4 is to be carried into execution.

Section 1973i(c) expressly provides that "this provision shall be applicable only to general, special, or primary elections held solely *or in part* for the purpose of selecting or electing any candidate for the office of President, Vice President, presidential elector, Member of the United States Senate, Member of the United States House of Representatives, [and other federal offices]" (emphasis ours). The House Report relating specifically to § 1973i(c) stated:

The power of Congress to reach intimidation by private individuals in purely local elections derives from article I, section 4, and the implied power of Congress to protect Federal elections against corrupt influences.... While article I, section 4 and the implied powers of Congress to prevent corruption in elections normally apply only to Federal elections, and section 11 [§ 1973i(c)] applied to all elec-

tions, these powers are plenary within their scope, and where intimidation is concerned, it is impractical to separate its pernicious effects between Federal and purely local elections. [1965 U.S.Code Cong. and Admins.News 2437, 2462]

In *Bowman*, the Fifth Circuit, after discussing most of the cases cited in the briefs filed in this case, concluded that:

The cases just discussed can be distilled into one basic proposition: under the Constitution, Congress may regulate "pure" federal elections, but not "pure" state or local elections; when federal and state candidates are together on the same ballot, Congress may regulate any activity which exposes the federal aspects of the election to the possibility of corruption, *whether or not the actual corruption takes place and whether or not the persons participating in such activity had a specific intent to expose the federal election to such corruption or possibility of corruption.* [636 F.2d at 1011] [emphasis ours].

*Bowman* further held that:

It is clearly evident here that Congress realized the evils of a manipulated electorate and tainted results and chose 42 U.S.C. § 1973i(c) as the means to overcome this public evil in those instances wherein it does, or could, infect a federal election. According to *Coy*, the erection of barriers to a potential threat to the federal electoral process is a proper exercise of the Congressional power to regulate federal elections. 127 U.S. at 754, 8 S.Ct. at 1270. With payments being made for voting, voters who might otherwise not have voted are brought into the electoral pool; the voters who are paid are subject to manipulation by the parties who paid them; the election thus becomes a spending contest with the candidate most willing and able to make such payments having the greatest chance of winning. The fact that the person making the payment did not intend to influence the federal election does not change the reality of the threat; the payment itself, *not* the purpose for which it is

made, is the harm and the gist of the offense. With federal and state elections held on the same day and with all candidates listed on one ballot, it is impossible to isolate a threat to the integrity of the state electoral process from a threat to the integrity of the federal contest. [Emphasis the court's]

In a similar manner, and quite independently of what the Fifth Circuit would later hold in *Bowman*, Chief Judge Heebe concluded that the fact that a person may buy votes to influence only a state election and may not have intended to influence a federal election contained on the same ballot is not material or relevant in a prosecution under § 1973i(c) for the reason that it is the prohibited payment itself, not the purpose for which such payment may have been made, which is the harm and gist of the offense prohibited by § 1973i(c).

Chief Judge Heebe concluded in *Simms* that § 1973i(c) "was envisioned to apply to purely local elections held at the same time as federal elections" and that:

> The legislative history of this section illustrates that its purpose was to assure ballot security for the expanded franchise contemplated by the Voting Rights Act. At the time this statute was passed, Congress had previously enacted a provision designed to govern expenditures to influence voting in an election for a federal official. See: 18 U.S.C. § 597. Obviously, § 1973i(c) was intended as something more than a mere replication of the existing provision. *Instead, the designed impact of this statute was to extend the protection of the federal courts to local elections held at the same time that any federal office was voted upon to secure the federal election from the danger of any impropriety or irregularity.* [508 F.Supp. 1183, emphasis ours]

We are convinced that both the Fifth Circuit in *Bowman* and Chief Judge Heebe in *Simms* correctly applied the applicable principles of constitutional law in determining that when Congress enacted § 1973i(c) it permissibly chose a necessary and proper means of protecting its exercise of the power conferred by Art. I, § 4 of the Constitution to determine the manner in which federal elections held in part with elections conducted for the purpose of electing persons to state office were to be conducted. Application of the same principles of constitutional law require that defendants' pending joint motion to dismiss indictment be denied.

Accordingly, it is

ORDERED (1) that defendants' joint motion to dismiss indictment should be and the same is hereby denied. It is further

ORDERED (2) that trial of the above case shall commence as presently scheduled on Monday, September 14, 1981. It is further

ORDERED (3) that on or before Noon, Friday, September 11, 1981, counsel for each party shall prepare, serve, and file:

(a) Requested instructions for the jury. (Each instruction to be separately numbered. The source of each instruction shall be stated on the bottom of the page of each requested instruction.)

(b) Requested questions to be asked of the jury on voir dire examination.

(c) Appropriate memorandum briefs on questions of law not heretofore briefed, including but not limited to questions relating to the admissibility of evidence.

(d) An updated list of witnesses which counsel for each party anticipates will be called at trial, listed in the tentative order each witness will be called.

(e) An updated list of exhibits which counsel for each party anticipates will be adduced at trial, said exhibits to be marked and indexed by the Clerk before trial.

(f) Any additional suggestion which counsel for any party may have in regard to the fair and just determination of the case.